**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

LARRY BABER,                              )
                                          )
        Plaintiff,               )
                                          )
                                          ) Case No. CIV-20-078-RAW-KEW
                                          )
COMMISSIONER OF THE SOCIAL                )
SECURITY ADMINISTRATION,                  )
                                          )
        Defendant.               )

**REPORT AND RECOMMENDATION**

Plaintiff Larry Clifford Baber (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 52 years old at the time of the ALJ's decision. He has at least a high school education and has past relevant work as a grinder operator and mixing machine operator. Claimant alleges an inability to work beginning on October 30, 2017, due to limitations resulting from coronary artery disease, partial collapse of the left lung, chronic obstructive pulmonary disease ("COPD"), and arthritis in the knees, hands, and elbows.

## Procedural History

On January 20, 2018, Claimant protectively filed his application for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social

3

Security Act. His application was denied initially and upon reconsideration. On August 7, 2019, ALJ Harold D. Davis conducted a hearing in Fort Smith, Arkansas, at which Claimant testified. On September 5, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on February 26, 2020, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ's RFC assessment was unsupported by medical evidence, as the ALJ (1) failed to properly evaluate the opinion of his treating doctor, Judy Trent, M.D.; and (2) the RFC did not contain all of Claimant's limitations.

## Consideration of Opinion Evidence

In his decision, the ALJ found Claimant suffered from severe impairments of hypertension, coronary artery disease status post percutaneous transluminal coronary angioplasty with stent, COPD, and degenerative joint disease of the knees. (Tr. 24). He

determined Claimant could perform light work with additional limitations. Claimant was limited to work in a controlled environment with no dust, fumes, smoke, or temperature extremes. He also was limited to work with simple instructions, simple tasks, and incidental contact with the public. (Tr. 26).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of fast food worker, merchandise marker, and housekeeping cleaner, all of which the ALJ found existed in sufficient numbers in the national economy. As a result, the ALJ concluded Claimant had not been under a disability from October 30, 2017, through the date of the decision. (Tr. 34).

Claimant asserts Dr. Trent's opinion supports a more restrictive RFC than one for light work. He maintains that his medical records show he is unable to perform the requirements of light work, primarily the standing requirements, and the ALJ should have given more weight to Dr. Trent's opinion.

As Defendant points out, because Claimant filed his claims after March 27, 2017, the medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, he must "articulate" in his decision "how persuasive [he]

5

find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs

(c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The ALJ discussed in detail Claimant's treatment with Dr. Trent. In July of 2017, Dr. Trent noted Claimant did not use an assistive device, was active at his job, his medications helped his arthritis and hypertension, and his coronary artery disease was mild and stable. Claimant slept well and had a full range of motion in all joints with full weight. In August of 2017, his chest CT was unchanged, and he was not interested in participating in a recommended weight management program until after undergoing a stress test. (Tr. 27, 395-404, 608, 610). By November of 2017, Claimant reported to Dr. Trent that after being hospitalized in October of 2017 and undergoing a cardiology workup that was negative, he had taken nitroglycerin every day. Claimant did not believe he could return to his job. Dr. Trent recommended Claimant lose weight and engage in daily exercise. (Tr. 27-28, 347-49). When Claimant returned to see Dr. Trent later that month, he reported he was walking half a mile several days a week without experiencing chest pain, but he was experiencing shortness of breath. Claimant indicated it was relieved by rest and Albuterol. Claimant remained uncertain if he could return to work, which he described as physically demanding. Dr. Trent indicated Claimant was unable to return to work for the next six weeks. (Tr. 28, 337-39).

Claimant reported to Dr. Trent in February of 2018 that his cardiac rehab classes were going well. His physical examination was normal, and he rated his pain level at zero. He was able to stand without assistance and walked with good balance. Dr. Trent encouraged Claimant to think about more sedentary jobs and gave him a note to remain off work through March 28, 2018. (Tr. 28, 322-27). Dr. Trent examined Claimant in March of 2018, for complaints of bilateral knee pain. X rays of Claimant's knees revealed early degenerative joint disease bilaterally with no acute traumatic changes. (Tr. 28, 515-16, 567). Claimant indicated he could not return to his job, which required him to lift fifty pounds and stand for a long period. Claimant's physical examination was normal, except for reports of pain in the bilateral knees, elbows, and right wrist. His range of motion was intact, and there was no swelling, he exhibited good balance, and his standing and walking were without assistance. His lab work was negative for inflammatory arthritis. Dr. Trent concluded Claimant could not return to his job and that he "most likely" could do nothing more than sedentary work. (Tr. 28, 542-45, 597).

By July of 2018, Claimant reported to Dr. Trent that he was feeling better, was more active, and wanted to return to work, but he wanted to work in a cool environment and avoid lifting. He discussed his physical capacity with Dr. Trent, and she recommended exercise, stretching, and bike riding, that he seek treatment for

8

his depression, and suggested a job with air conditioning and minimal lifting. (Tr. 29, 629-34). At an appointment with Dr. Trent in September of 2018, Claimant could stand and bear full weight with good balance and no assistance. He had a full range of motion in all joints. He was in no apparent distress, his blood pressure and COPD were controlled, and his body mass index was at 32.1. Claimant reported he was walking for exercise, but he had to miss if his knee pain was severe. Claimant was advised to lose weight. (Tr. 29, 642-47).

Claimant was seen by Dr. Trent in July of 2019, complaining of bilateral knee pain. He was counseled about his weight and the benefits of participation in a weight management program, but Claimant declined to participate. Claimant was able to stand and walk without assistance with good balance. He reported a recent fall when his left knee gave out and requested a cane. Dr. Trent noted an abrasion on his left knee. (Tr. 29-30, 698-705). She prescribed Claimant a cane for one year because of his knee pain. (Tr. 30, 719-20).

After discussing her treatment records, the ALJ specifically addressed Dr. Trent's March of 2018 opinion that Claimant was unable to return to his prior job and that he "most likely will never be able to do any more than sedentary work." (Tr. 32, 545). The ALJ concluded Dr. Trent's opinion was "somewhat persuasive," but when considering Claimant's medical tests and cardiology

workup and recommendations to exercise, both of which occurred after March of 2018, the ALJ determined Claimant was not as limited as Dr. Trent suggested. (Tr. 32).

The ALJ specifically discussed Dr. Trent's treatment of Claimant and her opinion that Claimant most likely would be limited to sedentary work. He discussed the evidence and provided an explanation for why he found her opinion only "somewhat persuasive." There is no error with the ALJ's evaluation of Dr. Trent's opinion.

### RFC Assessment

Claimant also asserts that the RFC assessment does not contain all of his limitations because the ALJ failed to consider his use of a cane. Claimant testified that Dr. Trent prescribed him a cane because he was losing his balance and getting dizzy, which caused him to fall down. (Tr. 55-56).

The ALJ determined Claimant could perform light work with non-exertional mental and environmental limitations. When discussing the evidence in his RFC assessment, the ALJ made several references from the medical evidence that Claimant walked without assistance or without an assistive device and/or had good balance. (Tr. 27-28). For example, in April of 2018, Claimant reported he did not use an assistive device and was not a fall risk. (Tr. 28, 603). In September of 2018, Claimant's examination revealed that he could stand, walk, and bear full weight with good balance and

10

without assistance. (Tr. 29, 644-45). The ALJ also discussed Claimant's report to Dr. Trent in July of 2019 that his knee gave out and that he requested a cane. At the same examination in July of 2019, however, Dr. Trent noted that on examination, Claimant could stand and walk without assistance and with good balance. She prescribed Claimant a cane for one year at his request. (Tr. 29-30, 702-705, 719-20).

The ALJ also discussed the opinion of the consultative examiner, Subrananiam Krishnamurthi, M.D., who examined Claimant in March of 2018 and observed Claimant to walk normally with normal gait and speed and normal heel and toe walking. Claimant was wearing a right knee brace, did not use a walker, had full strength in his bilateral upper and lower extremities, and a normal range of motion throughout his body. He complained of pain in both knees. (Tr. 32, 505-11).

When determining that Claimant's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical evidence of record, the ALJ specifically addressed Claimant's knee pain, degenerative joint disease, and his use of a cane:

> There is evidence of knee pain and an x-ray showed bilateral degenerative joint disease, however the [C]laimant had a full range of motion and was walking without assistance in early 2018. The [C]laimant was prescribed a cane but only after he requested it after a fall and a longitudinal review of the record shows the [C]laimant was routinely assessed with good balance and

> the ability to stand and walk without an assistive device. (Exhibits 6F/3-4, 30-32; 8F/1). Furthermore, the [C]laimant has shown a level of activity inconsistent with an individual unable to work. He was walking 0.5 miles every day unless his knees hurt, was able to walk around Walmart 2-3 times without difficulty. (Exhibit 1F/26, 29-30, 49-52; 8F).

(Tr. 31).

Here, the ALJ specifically addressed Claimant's use of a cane in the decision and provided an explanation for why he did not include it in the RFC assessment. There is no error in this regard, and the ALJ was not required to include such a limitation in the hypothetical questions presented to the VE. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding that an ALJ's hypothetical questioning of a VE will provide an appropriate basis for a denial of benefits where the questions "included all the limitations the ALJ ultimately included in his RFC assessment.") (citation omitted).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and

Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 31st day of August, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE